See also, D.C., 59 F.R.D. 537.

**James Ralph MORELAND, Individually and for Others Similarly Situated**

v.

**RUCKER PHARMACAL COMPANY, INC.**

Civ. A. No. 18105.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Aug. 6, 1974.

Robert Roberts, Jr., Marlin Risinger, Jr., Blanchard, Walker, O'Quin & Roberts, Shreveport, La., for plaintiff.

Robert G. Pugh, Pugh & Nelson, Shreveport, La., for defendant.

DAWKINS, Senior District Judge.

RULING ON DEFENDANT'S MOTION TO DISMISS AS A CLASS ACTION; PLAINTIFF'S MOTION TO IMPOSE COSTS ON DEFENDANT; PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT THE COMPLAINT; and PLAINTIFF'S MOTION TO DISMISS CERTAIN PERSONS FROM THE CLASS

This is an attempted class action brought under Rule 23, F.R.Civ.Proc. Jurisdiction is premised upon diverse citizenship and a claim in excess of $10,000. 28 U.S.C. § 1332. Plaintiff seeks declaratory and injunctive relief, plus damages.

Rucker Pharmacal Company, Inc., (Rucker) sold stock to a number of its employees subject to a stock transfer restriction giving Rucker the right to reacquire the stock at market price or book value, whichever was higher, in the event the employee-stockholder left its employ. Each employee purchasing such stock executed a contract effecting this. The contract provided that each stock certificate be inscribed with this restriction:

"The transferability of the shares represented by this certificate are restricted in accordance with an agreement between the registered owner hereof and Rucker Pharmacal Company, Inc., providing for the non-transferability and for the resale to Rucker Pharmacal Company, Inc., at the sales price in the event owner should leave the employ of Rucker prior to the happening of certain events. A copy of said agreement is on file at the office of Rucker Pharmacal Company, Inc., 6540 Line Avenue, Shreveport, Louisiana, available for inspection."

March 9, 1972, Rucker made its stock available for purchase on the public market. One of the requirements made by underwriters for Rucker to "go public" was the sale of one-fourth of the stock owned by each of Rucker's employee-stockholders. To this end, Moreland and the other employee-stockholders executed a power of attorney in favor of Johnny B. Rucker, President of Rucker, or his wife, Cornelia A. Rucker, also an officer of Rucker, and delivered to Rucker the certificates evidencing ownership of their stock. A short time following Rucker's public offering, Moreland and several other employees left Rucker's employ. Rucker sought to purchase Moreland's remaining stock pursuant to the

restriction and directed that plaintiff's stock in its hands not be returned to him.

Moreland alleges that Rucker represented to him, as well as all other employees purchasing stock, that the stock restriction agreement no longer would be effective after the Company "went public." He further contends, in the alternative, that the agreement was unreasonable and unlawful and, consequently, wholly ineffective.

Moreland filed this as a purported class action, asserting he represented a class consisting of all employees or former employees of Rucker who owned its common stock on March 9, 1972. It is upon this stock that Rucker claims a right of first refusal, or option to purchase, either by withholding delivery of the stock certificates, or by delivering the stock certificates imprinted with the legend restricting its transfer. Rucker timely filed a motion to dismiss this as a class action, which we now consider.

When the complaint was filed, Moreland alleged that the "class" consisted of between seventy-five and one hundred persons. But, since the suit was filed July 19, 1972, several incidents have reduced the size of the would-be class to a maximum of twenty-six persons, including plaintiff.

■ December 19, 1972, Rucker lifted the stock-transfer restriction on all shares owned by then company employees, thereby terminating all interests of those persons in this litigation. Clearly, they cannot be considered now as part of a class represented by plaintiff since they have no claim at all against Rucker. Then, December 17, 1973, the United States Supreme Court, by its ruling in Zahn v. International Paper Company, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), in legal effect reduced the number of persons eligible for membership in the plaintiff-designated class by holding that persons asserting separate and distinct claims in a class action each must satisfy the minimum jurisdictional amount by holding a claim in excess of $10,000. January 18, 1974, plaintiff filed a motion for leave to supplement the complaint which we shall allow.[1]

■ The supplemental complaint contends that plaintiff is entitled to a larger number of shares than originally issued to him due to a three-for-two stock split in February of 1973; and, further, that such shares have increased in value since the original complaint was filed, consequently increasing the amount in controversy. Even if we accept as true these allegations of the supplemental complaint, still, as noted, only twenty-six persons owning stock subject to the restriction, including plaintiff, have claims in excess of $10,000.[2]

Rucker attempts further to reduce the size of plaintiff's alleged class by asserting that all members of the class must be of citizenship diverse from that of defendant. Although we doubt the validity

1. Rule 15(d), F.R.Civ.P.:

"Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. . . . "

Wright and Miller, Federal Practice and Procedure, § 1504, p. 542 (1971):

". . . An application for leave to file a supplemental pleading is addressed to the discretion of the court and should be freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action. . . ." (Footnotes omitted.)

2. Answers to interrogatories by Rucker dated February 9, 1973, show that of the thirty-four employee-shareholders whose stock was not freed of the restriction by Rucker December 19, 1972, twenty-six, including plaintiff, owned 234 or more shares and nine owned less than 200 shares March 9, 1972. According to the supplemental complaint, those persons owning 200 shares would now own 300 shares after the stock split in February, 1973, and, based upon allegations of a market value of $33.50 per share, would have a claim of $10,050.

of this assertion, it is unnecessary to decide the issue. Even were we to rule in favor of plaintiff, it is our firm view that the class is not so numerous that joinder of all members is impractical, an essential requisite for maintenance of a class action, Rule 23(a)(1), F.R. Civ.P. Not only does the class consist of a relatively small number of persons; they easily are identifiable and subject to joinder. Although mere numbers alone are not determinative, joinder has been held preferable where the number of prospective members is between thirty and forty. *See, e. g.,* Atwood v. National Bank of Lima, 115 F.2d 861 (6th Cir.. 1940); Phillips v. Sherman, 197 F.Supp. 866, 869 (N.D.N.Y., 1961); Carlisle v. LTV Electrosystems, Inc., 54 F.R.D. 237 (N.D.Tex., 1972); Moscarelli v. Stamm, 288 F.Supp. 453 (E.D.N.Y., 1968).

 Plaintiff further has moved to impose costs and attorney's fees upon Rucker because of its lifting of the stock restriction upon shares of its then employees on December 19, 1972, after the class action was filed. His contention in this regard is that (1) prior to a determination by the Court under 23(c)(1), an action filed as a class action must be treated as such for purposes of dismissal or compromise, and (2) Rucker's surrender of the stock restriction constituted a "settlement" of claims of members of the class without Court approval, as required by Rule 23(e), thereby making Rucker liable to plaintiff for attorney's fees and costs since it has deprived Moreland of a fund from which to assess and collect such fees for actions which have benefited those members of the alleged class.

We agree with plaintiff that this would-be Rule 23 action should be treated as a class action for purposes of a dismissal or compromise until we have determined that the action may not so proceed. Moore's Federal Practice, Volume 3B, ¶ 23.50, page 23–1103; Wright and Miller, Federal Practice and Procedure, § 1797, page 236 (1971); Kahan v. Rosenstiel, 424 F.2d 161, 169 (3rd Cir., 1970); Philadelphia Electric Company v. Anaconda American Brass Company, 42 F.R.D. 324, 326 (E.D.Pa., 1967); Branch v. Reynolds Metals Company, 17 F.R. Service 2nd 494 (E.D.Va., 1972); Gaddis v. Wyman, 304 F.Supp. 713, 715 (S.D.N.Y., 1969); *Cf.* American Pipe and Construction Company v. State of Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed. 2d 713 (1974); City of Inglewood v. City of Los Angeles, 451 F.2d 948 (9th Cir., 1972). But we disagree that lifting the stock restriction amounted to a settlement or "compromise" with class members within the meaning of Rule 23(e).

Rule 23(e) provides:

"A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

There was no bargaining with alleged class members to relinquish their claims, nor was there contact of any sort in this respect made by Rucker. Instead, it merely did what it always had the right to do, *i. e.,* release whatever rights it had to repurchase its employees' stock. Surely the mere fact that plaintiff has filed this action, attempting to name Rucker's employees as members of the class which he represents, should not deprive Rucker of this clear contractual right.

Even where actual settlements are involved, the Second Circuit, in Weight Watchers of Philadelphia, Inc., v. Weight Watchers International, Inc., 455 F.2d 770 (2nd Cir., 1972), has held that, prior to the Court's determination that an action properly is brought under Rule 23, the defendant may negotiate settlements with class members which do not affect the rights of non-settling members, and the requirement of Court approval and notice in Rule 23(e) do not apply. With respect to an order by the District Court there allowing negotiations between that defendant and those non-party class members, the Court said:

" . . . Its maximum effect, and this is wholly speculative, would be to

cause settlements by so many franchisees—a course long favored by the law, cf. Williams v. First Nat'l Bank, 216 U.S. 582, 595, 30 S.Ct. 441, 54 L. Ed. 625 (1910)—as to eliminate the numerosity which F.R.Civ.P. 23(a)(1) makes a prerequisite to a class action, leaving plaintiff nonetheless free to prosecute its own individual claim, as two other franchisees were already doing.

" . . . Plaintiff's attempt to escape this conclusion by asserting that once a plaintiff brings a suit on behalf of a class, the court may never permit communications between the defendant and other members, even when, as here, both desire this, is in conflict not only with Suggested Local Rule No. 7 and Sample Pretrial Order 15, but with elementary considerations of common sense—and possibly, although we need not decide this, with a command of higher authority as well. Indeed, we are unable to perceive any legal theory that would endow a plaintiff who has brought what would have been a 'spurious' class action under former Rule 23 with a right to prevent negotiation of settlements between the defendant and other potential members of the class who are of a mind to do this; it is only the settlement of the class action itself without court approval that F.R.Civ.P. 23(e) prohibits. Cf. Webster Eisenlohr, Inc., v. Kalodner, 145 F.2d 316, 320 (3 Cir. 1944) (Goodrich, J.) cert. denied, 325 U.S. 867, 65 S.Ct. 1404, 89 L.Ed. 1986 (1944).

\* . \* \* \* \* \*

" . . . Here, even if defendant should succeed in settling with so many franchisees that the court will be forced to deny class action status, plaintiff's complaint will remain untouched. As we have, in essence, already noted, plaintiff has no legally protected right to sue on behalf of other franchisees who prefer to settle; F.R.Civ.P. 23(e), requiring court ap-

proval of the dismissal or compromise of a class action, does not bar non-approved settlements with individual members which have no effect upon the rights of others. Cf. Webster Eisenlohr, Inc. v. Kalodner, supra." 455 F.2d at pp. 773 and 775 (footnote omitted).

■ Moreover, the purpose of Rule 23(e) is to protect non-party members of a class—not persons such as plaintiff—from unjust or unfair settlements affecting their rights by representatives who lose interest or are able to secure satisfaction of their individual claims by compromise. Wright and Miller, Federal Practice and Procedure, § 1797, p. 226 (1971); Norman v. McKee, 431 F.2d 769, 774 (9th Cir., 1970). Such is not the case here. It is obvious that plaintiff has not pressed this motion to protect the interests of non-party members who already have received their stock free of the restriction. Rather, the motion purely is made for the benefit of plaintiff and his counsel.

■ Further, Rule 23(e) makes no provision for awarding attorney's fees or costs. It merely provides judicial control of settlements in class actions. After a lengthy evidentiary hearing which we held we are convinced that removal of this restriction was not engendered by this litigation, but instead was done in the normal course of events for the sole purpose of motivating current employees in creating good will toward the Company. The only authority which plaintiff cites to support his position is Kahan v. Rosenstiel, 424 F.2d 161 (3rd Cir., 1970), which merely held that plaintiff's pleadings stated a cause of action for attorney's fees and therefore should not have been dismissed. Even that case referred to the "highly unusual relief of having counsel fees paid by an adverse party" and stated that "[s]uch awards . . . are clearly reserved for exceptional cases . . . [w]here the behavior of a litigant has reflected a willful and persistent 'defiance of the law'

. . . ." *Id.* at p. 167. Such clearly is not the case here. In passing, we must note that the basic rationale for plaintiff's assertion is that where a party, by his own effort and expense, has conferred a substantial benefit upon members of a class all should share the costs proportionately; yet here the great bulk of plaintiff's effort and time was expended following the lifting of the stock restriction from the current employees' stock. To a great extent, plaintiff's thrust, through counsel, was directed toward holding these persons in a class action in which they were unwilling to be parties and where they no longer had any interest. Neither they nor Rucker should be held liable for attorney's fees.

We hold, therefore, that defendant's motion to dismiss as a class action hereby is granted, and plaintiff's motion to assess attorney's fees and costs to defendant is denied.

Our ruling renders it unnecessary to pass upon plaintiff's motion to dismiss certain persons from the class. Moreland, of course, remains as the sole plaintiff herein.